SELDEN, WITHERS & Co., Appellants, *vs.* THE BANK OF COMMERCE, Respondents.

An agent has implied authority to bind his principal in all matters which are fairly within the general scope of his agency, even if in the particular case the authority to act may have been expressly denied by the terms of his appointment, if this want of authority is not known to the other party. But if it be known that he has not the power to act in the particular case, the principal is not bound, for he may limit the authority of his agent at pleasure, and that limitation is conclusive upon all who deal with him, with a knowledge of its existence.

These rules apply to all transactions by one or more partners in the name of the firm; a partner has an implied agency, arising from the supposed assent of all the members, to act for his firm in all matters connected with its business, and his copartners are bound by it. But an express notice to third persons from the other partners, that the acts of a particular partner, or particular acts of any of the partners, are not authorized by the terms of their copartnership, would at once put an end to this implied authority, or agency, so far as all parties having the notice are concerned.

The public is supposed to deal with a partner in the full belief that he has authority to act for the firm in all things fairly pertaining to their partnership business; but if a person dealing with such copartner does not innocently rely on this implied assent, he does not receive the benefit of this rule. If he knows that the partnership is limited, and he deals with a partner in any matter not within the range of the partnership business, the firm is not bound by the transaction, unless he can show a previous authority, or subsequent assent or recognition of the act, on the part of the other partners, and in such cases the burthen of proof is on the other party, and not on the firm.

A partner cannot bind the firm to pay his private debt, nor the debt of a third person in which it has no interest.

If a firm has a note, debt or judgment against a third party, and a partner, within the scope of the partnership business, and for the benefit of the firm, assign the same, and at the same time guarantee it in the name of the firm, the guaranty would not bind the firm without distinct evidence that such guaranty was authorized, assented to or recognized by the other partners, or was according to the business or custom of the firm. The same rule applies with greater force to a guaranty, by a single partner, of the note or debt of a third person, in which the firm has no interest.

The degree of credit which a firm gives to a person associated with them as a copartner, does not extend to any act of his not connected with the business in which the copartnership is known or reputed to be engaged.

A party has a right to insist that a legal proposition be submitted to the jury in the very terms by him selected; and the Judge may refuse absolutely so to instruct, or may qualify the proposition. If there be a qualified charge it should be explicit and ought, in the qualified form, to follow the refusal. If the charge asked for be correct, it should be given, although covered by instructions already submitted; or, if there be a distinction, it should be drawn for the jury.

Statements of witnesses as to their impressions of facts or circumstances, or as to the opinions which they may have entertained concerning the same, or concerning the liability of parties, ought not to be admitted in evidence.

Where, in a commission to take testimony, an interrogatory is to be put, if a previous question is answered in a particular way, and that question is not answered in the manner indicated by the terms of the previous question, the conditional interrogatory should not be put, and if put, the answer thereto should not be admitted.

Appeal from a judgment of the District Court of Ramsey County. The action was founded upon an obligation of which the following is a copy:

"WASHINGTON, March 31, 1852.

"On demand we promise to pay to the order of H. B. Sweeny, Esq., Cashier, twenty thousand dollars, for value received—the sum of $25,000 in bonds of the Chesapeake and Ohio Canal Company being hypothecated for the same. The interest accruing on said bonds from this date to be equally divided between the said H. B. Sweeny, Cashier, and the undersigned.                    R. W. LATHAM & Co."

The complaint alleged that the Defendants, Selden, Withers & Co., entered into an agreement in writing with the Plantiffs by the name of H. B. Sweeny, Cashier, whereby for a valuable consideration they guaranteed to the Plaintiffs the payment of said note, and that R. W. Latham & Co. transferred the $25,000 in bonds, mentioned in the note, as collaterals, to the Plaintiffs.

That an agreement in writing was made, whereby it was agreed that in case of the payment of said note, said bonds should be re-delivered to said R. W. Latham & Co., or to their order, and in case of the non-payment of said note, said bonds might be sold as collaterals, &c.

That the note was not paid at maturity, the collaterals sold and the proceeds of sale credited on the note, and the Plaintiffs demand judgment for the balance due thereon.

The Defendants, Selden, Withers & Co., in their answer, deny the agreement to guarantee the payment of the note— and aver that said Robert W. Latham made the same, and

signed it with the name of Selden, Withers & Co., for the use and benefit of said R. W. Latham & Co., and not for the use or benefit of Selden, Withers & Co., and without their authority, knowledge or consent; and that the Plaintiffs knew it was for the use and benefit of R. W. Latham & Co., and not for the Defendant's use.

The Plaintiffs in reply, put in issue the new matter in the answer.

A jury trial was had and a verdict rendered in favor of the Plaintiffs.

The Defendants moved for a new trial upon a bill of exceptions, which motion was denied and the Plaintiffs entered judgment upon the verdict. The Defendants appeal.

The following are the points and authorities relied upon by the Counsel for the Appellants:

*First.*—After a full panel has been drawn for the trial of a cause, and after the peremptory challenges of the Defendants have been exhausted, the Court has no power to excuse or exclude three, or any number, of the jurors so drawn, upon the suggestion of Counsel for the Plaintiffs that said jurors had sat on a previous cause between the same parties in which similar issues were involved, where the facts are disputed and where the Counsel for the Defendants objects to their exclusion, except upon regular challenge and proper cause shown; especially where the general panel has been exhausted and the places of the excused or excluded jurors are to be filled by talesmen. *Stat. of Minn.* 588, *title "Trial by Jury."*

*Second.*—Where, in taking the depositions of witnesses abroad, upon commission, one or more of the interrogatories propounded are hypothetical, thus: "If you answer the next preceding interrogatory in the *affirmative*, then state," &c., and he answers it in the *negative;* the hypothesis having failed, the interrogatory should not be put, and if put and answered, it is error in the Court to permit either the interrogatory or the answer to be read to the jury. 1 *Greenleaf's Ev.*, *Sec.* 276, *note* 2, 277; *Bigelow vs. Collamer*, 5 *Cush.* 226; *Harper vs. Gilbert*, *Ib.* 417.

*Third.*—The party making and executing a written instrument, and afterwards pleading it as the foundation of an action, cannot, by parol testimony, contradict, alter or vary the terms thereof; nor can he by parol testimony or otherwise disprove the existence of a material fact, which is shown by and admitted upon the face of such written instrument. 1 *Gilbert's Evi.* 4 *and* 5; *Jackson vs. Sill,* 11 *John. R.* 212 *and* 213; 11 *John.* 212 *and* 213; 12 *John.* 490 *and* 491; 2 *Wend.* 569 *and* 570; 14 *Wend.* 30 *and* 31; 2 *Penn.* 1003; 1 *Penn.* 342; 1 *McCord* 209; 9 *Curtis U. S.* 395; 5 *Cow.* 144; 13 *Pick.* 131; 5 *Pick.* 506; 15 *Pick.* 66; 5 *Mass.* 411; 6 *Mass.* 435; 15 *Geo.* 175; 22 *Conn.* 299; 13 *Geo.* 192; 2 *U. S. Dig. title parol evidence*; 6 *B. Monroe* 612; 8 *Ired. Eq.* 308; 14 *Ala.* 714; 12 *B. Monroe* 11; 8 *Barb.* 205; 13 *Ill.* 133; 5 *Denio* 101.

*Fourth.*—Every party is as effectually concluded by his own pleadings as he is by his own deed, and cannot, upon the trial, introduce testimony to disprove facts set out in his pleadings, or to show a state of facts different from those pleaded, thus in effect contradicting the pleaded facts. 5 *Denio* 101; 18 *Conn.* 138, 443; 6 *B. Monroe* 12; 13 *How. U. S.* 307; 9 *Barb.* 500; 10 *Barb.* 406.

*Fifth.*—Where an offer is made to show certain independent acts or facts from which may be implied the recognition or ratification of a contract by a party who has in his pleading denied any knowledge of its existence; before such independent acts or facts can be shown, the party making the offer must first establish or have introduced some evidence going to establish the fact that the party sought to be charged with such recognition or ratification, had some notice or knowledge of the existence of the contract in question; and such evidence would be inadmissible, unless such subsequent ratification were pleaded. *Towle vs. Stevenson,* 1 *John. Cases* 110, *and note p.* 113; *Owings vs. Hull,* 11 *Curtis U. S. R.* 307; *Caines vs. Bleicher,* 12 *John.* 300; *Culver vs. Ashley,* 1 *Amer. Lea. Cases* 574 *and cases there cited; Chitty on Cont.,* 8*th Ed.* 202 *and notes* 1 *and* 2.

*Sixth.*—Where a party is sought to be charged by the terms

of a written contract, of the existence of which he has, by his pleadings, denied all knowledge, in the absence of any proof of such knowledge, no state of independent facts is admissible to show an assent to or acceptance of the terms of such contract, which would not, if admitted to be true, conclude him from showing a want of knowledge. *Chitty on Contracts*, 8th *Ed.* 202 *and cases cited in note* 2; 9 *Cranch* 159; *Clark, &c., vs Van Reemsdyke; Dunlap's Paley's Agency*, 171 *and note o.*

*Seventh.*—Where a principal is sought to be charged by his subsequent assent to and acceptance of the terms of a contract entered into by his agent without authority, of the existence of which he has by his pleadings denied all knowledge up to a specified time, in order to enable the opposite party to introduce evidence of facts from which such assent might be inferred by a jury, he must first show that the principal, the party sought to be so charged, had knowledge of the terms of such contract at the date of the doing of the act or acts, by the proof of which such assent is expected to be established, and must have also pleaded the fact of such subsequent assent and ratification. 26 *Wend.* 226, *Delafield vs. Illinois*; *Cases cited to point* 5th.

*Eighth.*—Where a partner, exceeding the general powers growing out of his relation to the firm of which he is a member, does an act, or enters into a contract in the name of the firm, the other members of said firm are not presumed to have notice of such an act or contract; that presumption extending only to acts done or contracts made within the scope of the legitimate powers of a partner, and when he transcends those powers, he is as much a stranger as if he were not a member of the firm, and his acts are the acts of a stranger. *Livingston vs. Roosevelt*, 4 *John. R.* 271 *to* 277, 278; *Laverty vs. Burr*, 1 *Wend.* 530, *&c.; Williams vs. Waldbrige*, 3 *Wend.* 415; *Mercein vs. Mack*, 10 *Wend.* 464 *and* 465.

*Ninth.*—Where a firm is sought to be charged by a subsequent assent to the terms of a contract, entered into by a member of such firm, in the name of his firm, without their knowledge or consent, and beyond the scope of his legitimate

powers, as a partner, all knowledge of which is denied by the pleadings of the firm, the party seeking to enforce such contract against such firm, cannot, until he has shown knowledge on the part of the firm, put to a witness the general question whether he has ever known such firm or any member of it to refuse to recognize such contract. It is irrelevant. *Same cases cited to point 5th; 12 B. Monroe 11.*

*Tenth.*—Parol testimony of the "understanding" of a party in interest, present at the making and execution of a written contract, or of the motive which led him to assent to its terms, or what he "regarded" as the effect of such contract, or to whom he "looked" or upon whom he "relied" for its fulfillment, or that he would have refused his assent had he "regarded" it differently, or had he not "regarded" it as binding upon a particular party is immaterial and inadmissible for any purpose. *Rogers vs. Batchelor,* 221, 223 *of* 12 *Peter's U. S. Reports;* 1 *Amer. Leu. Cases,* 437, &c; 1 *Wend.* 196; *Murray vs. Bethune,* 33 *Maine,* 32; 2 *Foster* 457; 5 *Cush.* 534.

*Eleventh.*—A written contract entered into by a member of a copartnership, in the name of his firm, and upon which the firm sought to be charged, which shows upon its face that it was not such a contract as a partner, by virtue of his partnership relation, had authority to execute—all authority as well as all knowledge of the transaction having been denied by the pleadings—is inadmissible for the purpose of charging the firm, until authority to execute it has been proved. Such an act, so far as the firm is concerned, if unauthorized, is absolutely void, and being so, is not susceptible of subsequent ratification by implication. *Cases cited to 5th point; Fenn vs. Harrison,* 3 *T. R.* 757; 4 *Ib.* 177; 1 *American Leading Cases* 437.

*Twelfth.*—A guaranty of a debt of a third party is not such an act as a partner, in a banking house, by virtue of his partnership relation merely, can do so as to bind his house, and where the fact that the debt guaranteed was for the use and accommodation of a third party, appears upon the face of the written agreement of guaranty, having admitted it in evidence, and no authority in the partner having been shown, it

is the duty of the Court, upon the motion of Defendants, Counsel, to enter a judgment of dismissal, in the nature of nonsuit, and it is error to refuse such judgment. 2 *Penn. R.* 177; *Sutton et al vs. Irvine et al,* 12 *S. & R.* 13; *Foot vs. Sabin,* 19 *John.* 159; *Landing vs. Gaines,* 2 *John R.* 300; *Dob vs. Hasty,* 2 *Caines Cases* 246; *Mercien vs. Mack,* 10 *Wend.* 463; *Cases cited to point 5th; Schermerhorn vs. Schermerhorn,* 1 *Wend.* 126; *Joyce vs. Williams,* 14 *Wend.* 145 *and cases cited in opinion.*

*Thirteenth.*—Where a contract is entered into by a partner, which, upon its face, shows that he was unauthorized to make it in the name of his firm, by virtue of the powers growing out of the partnership relation, and it appears from the testimony, introduced by the Plaintiffs, that it was entered into without the knowledge or consent of the other partners, the Defendants, no subsequent assent to such contract can be implied from any act of the Defendants, until it has been shown that they were aware of the terms of such contract; and the Plaintiffs having rested their case without attempting to show such knowledge, the Defendants are entitled to a judgment of dismissal, in the nature of a non-suit, and it is error to deny it when asked. 1 *Amer. Lea. Cases* 437 *and cases there cited; and cases cited to point 5th; Foot vs. Sabin,* 19 *John* 158, 159; *Smedes & Marsh.* 192; 3 *Blackford* 433; 22 *Penn. (Harris) R.* 21; 5 *Conn.* 574; 2 *Dev. & Bat.* 535; 4 *S. & R.* 397; 13 *S. & M.* 122; *Collyer on Part., Sec.* 498, 499; 12 *Leigh. & R.* 13; *U. S. Dig., p.* 367, *Sec.* 19.

*Fourteenth.*—The acts of a partner, beyond the scope of the business of his house, are not binding upon his copartners, unless authority be shown; and the rule, that where one of two innocent parties must suffer from the act of a copartner, the party who has held him out to the community as worthy of confidenc is the one to bear the burden, does not extend to any acts except those which a partner may do by virtue of the implied authority growing out of the partnership relation. *Laverty vs. Burr,* 1 *Wend.* 530, 531, 532; *Bank of Rochester vs. Bowen,* 7 *Wend.* 159; *Boyd et al vs. Plumb et al,* 7 *Wend.* 311; 14 *Wend* 135, 145, 150.

*Fifteenth.*—Where a partner transcends his general powers and enters upon inhibited grounds, he becomes a stranger to the firm of which he is a member, and his copartners are no more chargeable with his acts, though done in their firm name, than if he were not a member of the firm, or than if the firm name had been employed by an actual stranger. *Laverty vs. Burr*, 1 *Wend.* 530, 531, 532; *Mercein vs. Mack*, 10 *Wend.* 463; 14 *Wend.* 135, 145, 155.

*Sixteenth.*—The rules of commercial law having clearly defined the powers of a partner, growing out of the partnership relation, a third party in dealing with him, in all transactions beyond the scope of such authority, accepts the name of the firm at his peril; as the moment a partner transcends the limits of his just powers, all parties with whom he is dealing are presumed to know the law, and if they permit themselves to be imposed upon by his representations or otherwise, *they* must suffer the consequences of their *laches* and ignorance, and not the innocent copartners, who, being unadvised of the transaction, were powerless to prevent it. *Livingston vs. Roosevelt*, 4 *John.* 278; *all cases to point 5th; Foot vs. Sabin*, 19 *John.* 158; *Gansevort vs. Williams*, 14 *Wend.* 136.

*Seventeenth.*—Where a partner, in the name of his firm, enters into a contract with a stranger, guaranteeing the debt of a third party, or his individual debt, whether the party with whom he contracts believed, or supposed from representations of the partner or otherwise, that he was authorized so to use the name of his firm, is wholly immaterial, if no such authority really existed; as he could not bind his copartners without authority; and it being the privilege of the party as well as his duty, to ascertain if such authority existed, if he neglects to do so, and if such authority does not exist, he has no one to blame but himself, and no one to look to but the person with whom he dealt; and if he loses by it he must suffer the consequences of his *simplicity* or *laches*. 4 *John.* 271; 19 *John* 154; 1 *Wend.* 126, 532; *Gansevort vs. Williams*, 14 *Wend.* 135; *Joyce vs. Williams, Ibid.* 145; *Wilson vs. Williams, Ibid.* 155; *Stall vs. The Katskill Bank*, 18 *Wend.* 466; *Bank of Virginia vs. Cornman*, 7 *Barb.* 143.

*Eighteenth.*—Where a partner, without the knowledge or consent of his copartners, undertakes to do an act in the name of his firm which he would not be authorized to do, as a partner, in any kind of business, such as guaranteeing the debt of a third party, no subsequent assent which will bind the firm, can be *implied.* The act is the act of a stranger, and any assent or ratification must, to be binding on the firm, be express and unequivocal. *Mercein vs. Mack,* 10 *Wend.* 463; *Foot vs. Sabin,* 19 *John.* 154.

*Nineteenth.*—No authority to bind a firm, under a contract guaranteeing the debt of a third party, entered into by one of the partners, without the knowledge or consent of the copartners, in the name of the firm, can be implied from the fact that in other instances such partner has used the firm name in guaranteeing the debts of third parties, which acts had been acquiesced in and assented to by the firm; the rule, as to implied authority in a partner, arising out of the habits of a firm, only being applicable to cases where the firm had acquiesced in transactions of a partner beyond the scope of their particular line of trade, which would have been within the legitimate powers of a partner, had his firm been engaged in that particular branch of business. *Mercein vs. Mack,* 10 *Wend.* 463; 1 *Amer. Lea. Cases* 440 *and cases cited; Butler vs. Stocking,* 4 *Selden* 407.

*Twentieth.*—That the authority of a partner to do a given act, in the name of his firm, by virtue of the partnership relation, is a question of law for the Court, and it is error where the fact is undisputed, and apparent upon the face of the instrument sued upon, to refer such question to the jury. *Foot vs. Sabin,* 19 *John* 159; *Mercein vs. Mack,* 10 *Wend.* 463.

*Twenty-first.*—That it is error in a Court to instruct a jury, that it is for them to determine "whether there was any separate consideration moving from the Plaintiffs to the Defendants for the guarantee of the Defendants," when there was not a syllable of testimony introduced tending to show a consideration; and where the fact appeared from the face of the written instrument upon which the action was founded, that the only consideration moving to any one, was received by

R. W. Latham & Co. on the note, the payment of which was guaranteed by R. W. Latham in the name of the Defendants. 15 *U. S. Dig.*, *p.* 533, *Sec.* 54 *and* 55; 14 *Geo.* 27, 135, 137, 216; 15 *Penn. State R.* 25, 59; 8 *Geo.* 178.

*Twenty second.*—That where a contract for the payment of money is both made and payable in another State or jurisdiction, and no testimony is introduced to show the rate of interest allowed by law in such State or jurisdiction, no interest can be recovered, and a verdict which includes interest is excessive, and is a proper ground for a new trial. 2 *Wash. C. C.* 253; 2 *John.* 235; 2 *U. S. Dig.*, *p.* 619 *and* 620; *Ibid.* 118, 123, 127, 133, 134, 137; 1 *J. J. Marsh.* 406, 489; 2 *Post* 239; *Minor* 387.

*Twenty-third.*—That where instructions are requested, appropriate to the case before the Court, it is the duty of the Court either to give or refuse such instructions; the party requesting the same being entitled to their full benefit or unqualified refusal. *Stanton vs. The State*, 8 *Eng.* (*Ark.*) 317; *Thompson vs. Chumney*, 8 *Texas* 389; 14 *U. S. Dig.*, *p.* 559; 12 *U. S. Dig.*, *p.* 561, *Sec.* 53.

*Twenty-Fourth.*—That the verdict in this case was contrary to law and the evidence, and it was the duty of the Court, on the exceptions allowed and the case presented, to have granted a new trial, and it was error to refuse or deny it. 3 *Yeates*, 496, *and cases cited to point* 12*th.*

*Twenty-Sixth.*—The Court erred in charging the jury: "That if the Plaintiffs were conscious at the time of Latham's misconduct in pledging the firm to a separate transaction, one in which his partners had no interest and to which they had not assented, they could not recover, unless they show affirmatively a subsequent recognition or adoption of the transaction by the non-assenting partners." *Cases cited to point* 12*th.*

*Twenty-Seventh.*—The Court erred in charging the jury: "That if the Plaintiffs were not conscious of Latham's want of authority, and if there was nothing in the form or nature of the transaction or the circumstances attending it, to put the Plaintiffs, as ordinary prudent men, upon the inquiry, as to his authority to bind his firm by a guaranty; and if at the same

time the jury find that the Defendants knew nothing of the transaction, it will then be necessary to scrutinize the *subsequent conduct* of both Plaintiffs and Defendants in the premises; and if the jury find that the subsequent conduct indicates any complicity with Latham to defraud the Defendants, after the execution of the guaranty and delivery of the note, and that Defendants are innocent of any assent in fact to the original transaction, or of any intention to assent to such transaction, then Plaintiffs cannot recover. But if both parties, Plaintiffs and Defendants, are equally innocent, in their *subsequent conduct*, as to guilty *complicity* on the one part and actual assent on the other, then this principle of law intervenes and declares who shall, to wit: If one of two innocent parties must suffer from the act of a third party, he shall suffer who has been the cause or occasion, by connection in business or otherwise, of inducing trust or confidence to be placed in such third party. Hence, if the jury believe from the testimony that Plaintiffs *did not know of Latham's want of authority*, and there were no circumstances attending the transaction to put them, as prudent business men, on enquiry as to his authority, and if the Plaintiffs' subsequent conduct is wholly free from suspicion to any complicity on their part with Latham to defraud Selden, Withers & Co., and Defendants are *equally free from any knowledge or assent* to the transaction, then Plaintiffs are entitled to recover. In other words, subject to the above limitations, if Latham cheated both Plaintiffs and Defendants, then Plaintiffs are entitled to recover; because Defendants, by associating Latham with them in business, held him out to Plaintiffs and community generally as worthy of confidence, and they (Defendants) must suffer the consequences of his misconduct." *Patterson vs. Doe*, 8 *Black.*, 237; *same*, 95; 1 *Pick.*, 206; 12 *Pick.*, 177; 11 *Wend.*, 83; 5 *Mass.*, 365–438, *and cases cited to point* 12*th*.

*Twenty-Eighth.*—The Court erred in refusing to charge the jury as requested in Defendants' first point submitted; also in the second; also in the third; and in like manner in refusing the fourth; also in refusing the last. 13 *Ala.*, 222; 9 *U. S. Dig.*, *p.* 416, *Sec.* 24; 13 *Ala.*, 539; 9 *U. S. Dig.*, *p.* 416, *Sec.* 27.

*Twenty-ninth.*—The promissory note to secure which the agreement of guaranty was given, having been made by R. W. Latham & Co. to the Plaintiffs, and the fact appearing upon the face of the written instrument entered into at the time and as a part of the same transaction, that the money loaned upon the note was for the use and accommodation of the drawees; these facts in law were notice to the Plaintiffs that Latham was acting in fraud of his copartners, Selden, Withers & Co., and therefore the Plaintiffs cannot answer. 4 *John.* 271; 19 *John.* 154; 1 *Wend.* 126; 3 *Wend.* 415; 7 *Wend.* 159, 311; 1 *Wend.* 532; 10 *Wend.* 463; 14 *Wend.* 135, 145, 155; 18 *Wend.* 466; 7 *Barb.* 143; 19 *Barb.* 326; 4 *Seld.* 407; 2 *John.* 300; 1 *Amer. Lea. Cases* 440 *and cases cited*; 16 *John.* 34; 2 *Caines Cases* 246; 1 *John. Cases* 110 *and note to* 113; 12 *John.* 300; *Same* 453 *and cases cited;* 2 *Penn. Reports* 177; *N. Y. Fire Ins. Co. vs. Bennett,* 5 *Conn.* 574; *Collyer on Partnership, Sec.* 3, *p.* 480, 483, 495, 496, *note* 3 *and cases cited,* 497, 417, 499 *and note* 1; *Cases cited to point* 12*th;* 1 *Story on Partnership* 132; 3 *Kent* 43, 44, 45, 46 *and cases cited;* 2 *Wheaton's Selwyn* 1149, 1150 *and* 1151 *and notes.*

[The points and authorities of Counsel for the Respondents are not on file.]

D. COOPER, Counsel for Appellants.

WM. HOLLINSHEAD, Counsel for Respondents.

*By the Court*—EMMETT, C. J.    Nothing is better settled than that an agent has an implied authority to bind his principal in all matters which are fairly within the general scope of his agency, even although in the particular case the authority to act may have been expressly denied by the terms of his appointment, if this want of authority is not known to the other party. But if it be known that he has not the power to act in the particular case, the principal is not bound, for he may limit the authority of his agent at pleasure, and that limitation is con-

clusive upon all who deal with him with a knowledge of its existence. And these simple rules apply in full force to all transactions by one or more partners in the name of the firm; for a partner has an implied agency, arising from the supposed assent of all the members, to act for his firm in all matters connected with the business transacted by it, and his copartners are bound by his acts; but an express notice to third persons, from the other partners, that the acts of a particular partner, or particular acts of any of the partners, are not authorized by the terms of the copartnership, would at once put an end to this implied agency or authority, so far as all parties having the notice are concerned.

This implied authority is necessary to the protection of the public, which is supposed to deal with a partner in the full belief that he has authority to act for the firm in all things fairly pertaining to the partnership business; but the authority goes no further, and if a person, dealing with such partner, does not thus innocently rely on this implied assent, he is not entitled to, nor does he receive the benefit of the rule. If the partnership is known to him to be limited, and he deals with a partner in any matter not within the range of the partnership business—if he receive from him money or property belonging to the firm in discharge of his individual debt—if he receive the partnership note in discharge of his private debt, or as security for the debt of a third person, knowing it to be for such private debt or security, the firm is not bound by the transaction unless he can show a previous authority or subsequent assent or recognition on the part of the remaining partners; for such acts are beyond the scope of the partner's implied agency. And in all such cases the burthen of proof is on the other party, not on the firm. *Livingston vs. Roosevelt*, 4 *John.*, 251; *Rogers vs. Batchelor*, 12 *Peters*, 221. A partner cannot by any kind of arrangement bind the firm to pay his private debt, *Nobles vs. McClintock*, 2 *Watts & Sargeant*, 152; and it seems to me that there is still greater reason why he should not have authority to bind the firm for the payment of the debt of a third person, in which it has no interest.

If a firm has a note, debt, or judgment against a third party,

and a partner within the scope of the partnership business, and for the benefit of the firm, assign the same, and at the same time guarantee it in the name of the firm, a strong case would seem to be presented for holding the firm liable on the guaranty ; but we find that such is not the law, without distinct evidence that such guaranty was authorized, assented to or recognized by the other partners, or was according to the business or custom of the firm. 2 *Penrose & Watts*, 177 ; 12 *Sargeant & Rawle*, 13. If there be reason for doubting a firm's liability, in a case of the kind just mentioned, it seems to me to apply, with ten fold force, to a guaranty, by a single partner, of the note or debt of a third person, in which the firm has no interest. I have found but a single case in which such a guaranty was held to be binding upon the firm. In *ex parte Gardom*, 15 *Ves.*, 286, the point was made, and abandoned as untenable, but I think it may fairly be inferred from the statement of facts in that case, that the other partner had a knowledge of, and assented to the guaranty at the time it was made ; so that the case can hardly be deemed an authority on the question. It will not certainly be contended that such an authority in a single partner is fairly to be implied from the nature of the mere agreement of copartnership.

In the case at bar, the note of third parties, payable to the Plaintiffs, was guaranteed by a single partner, in the name of the firm, but it was claimed that the firm was in fact interested in the note, or in the consideration for which it was given. Admitting this to be true, the firm is not liable, according to the authorities before cited, without distinct evidence that there was an authority, assent or recognition by the other partners. 1 *Am. Leading Cases*, 453, *citing cases above referred to and others.* But if, as contended by the Defendants, the firm had no interest whatever, there is still greater reason for holding the Plaintiffs to the proof of authority or assent, if, indeed, an express promise be not absolutely necessary to hold the Defendants responsible.

The Judge, in his charge to the jury, took the ground that if the Plaintiffs had reasonable cause for believing that Latham had authority from his firm to give the guaranty, or that the

firm was privy to, or was interested in the transaction, they ought to recover, and this too, as we infer, whether their belief as to these points was founded in fact or not.

The direct tendency of another portion of his charge, whether so intended or not, was to lead the jury to believe that the Plaintiffs must recover unless they were either guilty of fraudulently taking the guaranty, knowing that Latham had no authority to give it, or guilty of combining with Latham afterwards, to defraud his copartners. And he proceeds further to say in substance, that, if the parties were equally ignorant, the Defendants, of the guaranty by Latham, and the Plaintiffs, of his want of authority, and one or the other has to lose by the fraud of Latham, the Defendants must be the sufferers, because they had by associating Latham in business with them, led community to believe him worthy of confidence.

We do not so understand the law and we hold each of these propositions to be wrong.

In our opinion it could make no difference what may have been the belief of the Plaintiffs as to Latham's authority, or as to the interest which the firm may have had in the transaction. Nor is it necessary in order to defeat the Plaintiffs, that they should have been aware that Latham had no authority, nor that they should afterwards have fraudulently combined with him to defraud the firm. Their right to recover depends entirely upon the *fact* of Latham's authority express or implied, or on the subsequent recognition or adoption of his acts by his copartners; and if the Defendants failed to establish this authority or assent, they were not entitled to a judgment, whatsoever may have been their belief at the time the transaction took place. The existence of circumstances from which the Plaintiffs might reasonably have inferred that the guaranty was given with the authority of the other parties, or that the firm had an interest in the transaction, might possibly have changed the *onus probandi* of Latham's fraud, to the partners, but could have had no other effect. According to the English decisions, it lies upon the partners in such cases to prove the fraud, but it is believed that the American cases are all the other way.

And as to the degree of credit, which a firm gives a person by merely associating him as a copartner, we hold that it does not extend to any act of his, not connected with the business, in which the copartnership is known or reputed to be engaged. The public may rightfully consider that each partner has authority to bind the firm in all matters pertaining to the partnership business, but cannot reasonably believe he is authorized to go further.

This view of the case renders it unnecessary to consider at length the refusal of the judge to charge as requested by the Defendants.   We will remark only that a party has a right to insist that his legal proposition be submitted to the jury in the very terms by him selected ; and the judge may refuse absolutely so to instruct the jury, or may qualify the proposition. But if there be a qualified charge it should be explicit and ought perhaps in the qualified form immediately to follow the refusal ; otherwise the jury might regard it as an absolute refusal to charge as requested, and the injurious effect thus produced, will in general be the same, whether the proposition has in substance been affirmed in other terms in a former part of the charge or not.   If the charge asked for be correct, it should be given, although covered by the instructions already submitted, or if there be a distinction, it should be drawn for them, because as before stated the refusal, unless carefully guarded and explained is apt to confuse the jury and lessen the effect of the proposition already stated to them.

It will hardly be expected that we should notice each of the thirty-five or forty exceptions taken at the trial, after having considered and decided the points which we deem essential to the determination of the real questions in issue between the parties.   There are however some twenty or more of these exceptions which relate to the admission of testimony, of which we may say generally, that the statements of witnesses as to their mere impressions of facts or circumstances, or as to the opinions which they may have entertained concerning the same, or concerning the liability of parties, ought not to be admitted—and that where, in a commission to take testimony, an interrogatory is to be put, if a previous question is answered

in a particular way, and that question is not answered in the manner indicated by the terms of the interrogatory, the interrogatory should not be put, and if put, the answer thereto should not be admitted. If a party in such case desires an answer at any rate, he should frame his question accordingly. If he frame it hypothetically, the presumption is that he does not desire an answer unless the fact exists, upon which the question is founded; otherwise the other party may be prejudiced, for he may have waived an examination of the subject called for by the interrogatory, knowing that the fact upon which it was in terms predicated, did not exist.

A new trial is awarded with costs.