NORTH STAR BOOT AND SHOE CO. V. STEBBINS, *et al.*

1.  The general powers of cashiers of banking institutions do not extend to
    the making of obligations or binding contracts beyond the scope of
    their duties as cashier. They have no right to create new liabilities
    against the bank of an extraordinary character. Their powers are de-
    fined and limited by law, and persons dealing with them are bound to
    know the extent of them, and with knowledge on their part of the want
    of authority on the part of a cashier to create a liability outside the
    general scope of the banking business, a recovery against the bank
    will not be authorized upon a contract so made.
2.  Cashiers of banks are held out to the public as having authority to act
    according to the general usage, practice and course of business con-
    ducted by the bank, and their acts, within the scope of such usage,

practice, and course of business, will, in general, bind the bank in favor of third persons in possession of no other knowledge.

3.  A purchase of boots and shoes in the name of a bank, by its cashier and general manager, for the benefit of a third person, will not make the bank liable for the amount of the purchase, in the absence of knowledge on the part of the bank of the purchase at the time, or a ratification of it since the purchase; the dealing of merchandise not being within the general usage, practice, or course of business conducted by banking institutions.

4.  A firm is bound by all representations made by a partner, while acting within the scope of his real or implied authority, and having reference to the business of the firm, but not by statements made outside of the nature of the business which the firm was constituted to transact.

5.  One partner cannot, by his individual act, bind the firm for the debt of another, without authority specially given him for that purpose, or implied from the common course of business of the firm, unless the act of the partner be afterwards ratified by the other members of the firm. The burden of proving the authority and consent of the other partners lies on those seeking to hold the firm.

6.  When one member of a firm is acting in any business transaction beyond the scope of the partnership business, notice to him is not equivalent to notice to the other partners.

7.  The failure of the jury to find upon the issue raised by a counter-claim in defendants' answer, not being prejudicial to any of plaintiff's rights, will not be reviewed on appeal.

(Syllabus by the Court.    Opinion filed May 28, 1891.)

Appeal from circuit court, Lawrence county. Honorable CHARLES M. THOMAS, Judge.

Action to recover for goods, wares and merchandise, alleged to have been sold and delivered by plaintiff to defendants. The defendants interposed a general denial and counterclaim. At the close of the evidence defendants moved the court to direct a verdict in their favor, which motion was allowed and judgment thereupon entered. Plaintiff appeals. Affirmed.

The facts are fully stated in the opinion.

*Van Cise & Wilson,* for appellant.

The practice of directing a verdict for defendant has in many states superseded the ancient practice of a demurrer to evidence. It answers the same purpose, and should be tested by the same rules. A demurrer to evidence admits not only the facts stated, but also every conclusion which a jury might

fairly or reasonably infer therefrom. Parks v. Ross, 11 How. 362; Bank v. Smith, 11 Wheat. 179; Railroad v. Foster, 104 Ind. 293.

The contract being executed and the fruits thereof retained, the doctrine of *ultra vires* would not apply. Mining Co. v. Bank, 96 U. S. 640.

That the contract was made for Seedall's benefit does not alter the defendants' liability. The manner in which it was made and the circumstances attending it made it an original promise of the defendants, and not a mere collateral guaranty of a debt. § 1653 Civil Code; Grant v. Wolf, 24 N. W. 289; Booth v. Heirst, 94 Pa. St. 177; Hall v. Wood, 3 Pin. 308; Winslow v. Lumber Co. 20 N. W. 145; Champion v. Doty, 31 Wis. 190; Larsen v. Jensen, 19 N. W. 130; Hartley Bros. v. Varner, 88 Ill. 561.

The cashier, Clary, was not exceeding his power as an agent nor the partner Fox creating obligations beyond the partnership business. People's Bank v. Man'f. Bank, 101 U. S. 181; § 1349 Civil Code; Parsons on Partnership, p. 178.

The question whether there is any evidence is for the court; the sufficiency of evidence is for the jury. It is error in the latter class of cases to direct a verdict. Ins. Co. v. Rodel, 95 U. S. 232; Manchester v. Erickson, 105 U. S. 347; Ins. Co. v. Doster, 106 U. S. 30; Ins. Co. v. Lathorp, 111 U. S. 612.

The motion was to direct a verdict for defendants. The verdict as returned was for the defendants "on the issues joined by defendants' answer to plaintiff's complaint." This is not a verdict upon the counter-claim, because it does not state the amount of recovery. § 262 Code Civ. Proc.; Watson v. Damon, 54 Cal. 278; Fryberger v. Corney, 1 N. W. 807; Black v. Winterstein, 6 Neb. 224; Bowers v. Rice, 27 N. W. 646. There being a failure to find on the counter-claim the verdict is void, as it does not find on all the issues. § 260 Code Civ. Proc.; Uhlig v. Garretson, 2 Dak. 90; Holt v. Van Epps, 1 Dak. 207; Muller v. Jewett, 5 Pac. 84; McGinnis v. Egbert, Id. 652; Bashford v. Kendall, 7 Pac. 176; Stewart v. Taylor, 8 Pac. 605; Bricker v. Railroad, 83 Mo. 391; Ridenour v. Miller, 83 Ind.

308; Rankin v. Railroad, 15 Pac. 57; Search v. Miller, 1 N. W. 907.

*Martin & Mason*, for respondents.

The judge should direct the jury to find a verdict for either party when a contrary verdict would be set aside as being against the evidence. Finney v. Railroad, 3 Dak. 270; Bank v. Comfort, 28 N. W. 855; Knapp v. Bank, 5 Dak. 378; Baylies' Trial Pr. p. 228; Marshall v. Hubbard, 117 U. S. 415; Randall v. Railroad, 109 U. S. 478; Montclaire v. Dana, 107 U. S. 162; Griggs v. Houston, 104 U. S. 553; Dodge v. Gaylord, 53 Ind. 377; Carver v. Carver, 97 Ind. 517; Hall v. Durham, 10 N. E. 581; Cutter v. Hurlbut, 29 Wis. 152.

When the plaintiff fails to prove the cause of action alleged in his complaint he must be non-suited, even though he has proved a cause of action not alleged in his complaint. Baylies' Trial Pr. pp. 215, 220, 214; § 140 Code Civ. Proc.

Plaintiff nowhere attempts to show actual authority in Clary, the cashier of defendants, to purchase, but relies upon his implied authority as cashier and managing agent of the banking business. The power to buy boots and shoes is not within the inherent or implied powers of a bank cashier. 1 Morse Banks, § 152, 165; § 3981 Comp. Laws; Ewell's Evans Agency, 108; Mechem Agency, § 280. Fox, the partner, could not ratify the act of the cashier so as to bind the remaining partners, as the purchase was outside what was necessary or usual to carry on the banking business. §§ 3974, 4052, 4044, 4045, 4052, Comp. Laws.

A partner who enters into a contract on behalf of his firm is not liable on that contract except as one of the firm; he cannot be made individually liable as a principal. Lindley on Part. 365; §§ 4000, 4052, 3999, Comp. Laws; Ewell's Evans Agency, 406; Mechem Agency, § 550.

If the verdict was erroneous it was an error not prejudicial to plaintiff and one of which he cannot complain. Miller v. Krueger, 13 Pac. 641. The court shall in every stage of action disregard an error or defect in the pleadings or proceedings which shall not affect the substantial rights of the adverse party;

and no judgment shall be reversed or affected by reason of such error or defect.     § 145 Code Civ. Proc.; Thompson v. Schuster, 28 N. W. 858; Hayne on New Trial and App. § 286.     Defects in verdicts may be waived by consent of counsel.     Hayne New Trial and Appeal, 709; Gonzales v. Leon, 31 Cal. 98.

BENNETT, J.     This action was brought by plaintiff to recover a balance due for goods, wares, and merchandise alleged to have been sold defendants.     The answer was a general denial, and a counter-claim for storage of goods, etc.     The counter-claim was denied by plaintiff.     On these issues a trial was had, and evidence introduced by both parties.     At the close of the evidence the defendant moved the court to direct a verdict for the defendant upon the ground that there was no evidence tending to show that the defendants ever purchased the goods, etc., alleged in the complaint, or that the acts of Cashier Clary, or the partner, Fox, were authorized by the copartners in the case.     The motion was sustained, and the court directed the jury to rejurn a verdict in favor of defendants; whereupon they returned the following verdict:     "We, the jury in the above entitled case, find for the defendants' answer to plaintiff's complaint."     Judgment rendered; appeal perfected.     The assignment of errors raises but two distinct questions:     (1) The propriety of directing a verdict for defendants; (2) the entering of judgment on the form of the verdict rendered.

There is no evidence tending to show that defendants personally purchased any goods of plaintiff, nor does the plaintiff claim to have so sold the goods, but claims to have sold them through Fred M. Clary, cashier of defendants' bank, and their managing agent at Central City; and that Fox, one of the defendants, afterwards admitted the liability of defendants for all goods shipped to them under the arrangement made with Clary.     The evidence shows that defendants were doing a general partnership banking business at Central City, D. T., in October, 1884; that William R. Stebbins, one of the partners, resided in New York city; that Herman H. Mund, another partner, resided in Montana, and that Allen Fox, the other partner, resided at Deadwood; and that Fred M. Clary was

their cashier and managing agent at Central City. About the 3d day of Oct., 1884, E. D. Mansfield, a traveling salesman for plaintiff, was at Central City, and was requested by one Joseph Seedall, a merchant at that place, to sell him goods. This Mansfield refused to do, but told him if he could get defendants to buy goods for him, the plaintiff would sell and ship goods to them. Seedall went to defendants' place of business, and returned, saying he had made arrangements with them to buy goods for him. A list was then made out and taken to defendfendants' place of business, and there submitted to McClary, the cashier. He told Mansfield to ship the goods on that list to defendants; that defendants would buy the goods and others, from time to time, from plaintiff, and pay for them. The goods were shipped to the defendants. In June, July, and December, 1885, further goods were sold and received in like manner. At one time defendant Fox, one of the partners, called Mansfield and Seedell into his office in Deadwood, and objected to buying goods from plaintiff to be furnished to Seedall, Fox admitting the liability of defendants for all goods already shipped. Mansfield said he had just sent in a new order, amounting to about $2,500, and, if Fox did not care to continue the account longer with plaintiff, he would countermand the order. After some conversation, Fox told him he need not do so, but to ship the goods under the same arrangement that had previously been made with Clary, and defendants would pay for them. In addition to these, there were orders sent direct from defendants to plaintiff, but signed "F. M. Clary, Cas." Payments were also made from time to time by the defendants. The defendant Mund did not testify, nor did any one for him deny that he had notice of the transactions of the partner, Fox, and Cashier Clary with the plaintiff. The defendant Stebbins testified he did not know that Clary had purchased boots and shoes from plaintiff for the account of defendants until some time after the alleged purchase. The cashier, Clary, admits the receipt of the goods; that the bills were due at a certain time; and that defendants remitted the face of the bills. Fox, one of the partners, admits that he knew the goods were

shipped to the defendants, and knew it from the time of the first shipment. Stebbins denies the power of Clary to make the purchases, and Fox and Clary deny agreeing to pay interest on the bills after due. The above is substantially all of the testimony in the case.

Under the allegations of the complaint, it devolves upon the plaintiff to establish a sale of these goods to the defendants. The evidence shows that the transaction was originally made with Clary, the cashier, and that Fox, one of the defendants, afterward admitted the liability of defendants for all goods already shipped to them. The only evidence that Clary had authority to make the purchase on behalf of the defendants is the statement of plaintiff's witness Mansfield that he was the cashier and managing agent for them, and the further fact that he was the cashier of the bank. The question naturally arises, has a bank cashier authority such as would authorize him to buy boots and shoes on the credit of the bank, so as to entitle the plaintiff to recover by reason of Clary's act? The plaintiff made no attempt to show any actual authority in Clary, but relied wholly upon such authority as may be implied from his position as cashier and managing agent of a banking business. The general power of a cashier of a banking institution does not extend to the making of obligations or contracts beyond the scope of his duties as a cashier, and he has no right to create new liabilities of the bank of an extraordinary character, and persons dealing with institutions of this kind are bound to know the extent of their powers. Their powers are defined and limited by law, and with knowedge on their part of the want of authority on the part of a cashier to create this liability, we know of no principle of law or ethics that would authorize a recovery against the bank. It was incumbent upon the plaintiff to show that Clary had authority to buy goods, wares, and merchandise of the plaintiff, or otherwise, before it can bind defendants by his acts, or to show that such transaction came clearly within the powers of such cashier, by general usage and custom. The plaintiff cannot argue that because the defendants put a cashier into their bank, and held

him out to the world as the organ of the bank for doing the business of banking, therefore, any acts done by him, whether in the legitimate line of banking, or in the purchase of merchandise or real estate, should be *prima facie* valid, and make the bank responsible. The putting a cashier behind the counter of a bank gives him no power to bind the bank beyond the inherent functions belonging to the office of cashier. Something more is necessary to be shown than the fact that Clary was the cashier of defendants, before the banking firm can be held responsible in an outside transaction not properly belonging to the business of banking. Cashiers of banks are held out to the public as having authority to act according to general usage, practice, and course of business conducted by the bank, and their acts, within the scope of such usage, practice, and course of business, will, in general, bind the bank in favor of third persons possessing no other knowledge. Minor v. Bank, 1 Pet. 70; Bank v. Dunn, 6 Pet. 59.

The ordinary duties of a cashier of a bank are quite extensive, but it is well settled that they do not comprehend the making of a contract which involves the payment of money, without an express authority from the directors or owners, unless it be such as relates to the usual and customary transactions of a bank. U. S. v. Bank, 21 How., 362. Something more was necessary to be shown than the fact that Clary was the cashier of defendants, in order to make his act in purchasing these goods of plaintiff binding upon the defendants. This the evidence does not disclose, unless it may be found that the subsequent acts of Fox, one of the defendants and one of the partners, made the transactions of the cashier binding upon them. The acts of Clary could not have been ratified by Fox so as to bind the remaining partners, because every general partner is agent for the partnership in the transaction of its business, and has authority to do whatever is necessary to carry on such business in the ordinary manner, and for this purpose may bind his copartners by an agreement in writing. Comp. Laws, §§ 4044, 4045. A ratification is not valid unless,

at the time of ratifying the act done, the principal has power to confer the authority for such an act. Id. §§ 3974, 4052. A firm is bound by all representations made by a partner while acting within the scope of his real or implied authority, and having reference to the business of the firm; but not by statements made by him outside of the nature of the business which the firm was constituted to transact. One partner cannot, by his individual act, bind the firm for the debt of another, or as a party to a note or bill made for the accommodation or as surety of another, without authority specially given him for the purpose, or implied from the common course of business of the firm, unless the act of the partner be afterwards ratified by the other partner. The burden of proving this authority and consent of the other partners lies on the persons seeking to hold the firm. Sweetser v. French, 2 Cush. 309; Rollins v. Stevens, 31 Me. 454; Selden v. Bank, 3 Minn. 166, (Gil. 108;) Avery v. Rowell, 59 Wis. 82, 17 N. W. Rep. 875; Bank v. McDonald, 127 Mass. 82; Clarke v. Wallace, (N. D.) ante 339; (?) Moynahan v. Hanaford, 42 Mich. 329, 3 N. W. Rep. 944.

It was incumbent upon the plaintiff in the case at bar to show knowledge or notice on the part of the defendants that Clary, their Cashier, was seeking to bind them by a purchase of boots and shoes. This they failed to do. Stebbins, one of the defendants, testifies that he had no knowledge of the transaction until some time after the alleged purchase; never knew of any receipt of boots or shoes by the firm, or of any disposition made of them. No notice can be presumed to have come to the knowledge of Mund, the other partner. When one member of a firm is acting in any business transaction beyond his power, and outside the scope of the partnership business, and whose duty it is to give his firm notice of what he is doing or has done, notice on his part is not equivalent to notice by them. To bind a partnership to the payment for goods delivered to third persons, it is not enough to show that one of the partners requested the furnishing of the goods to such third persons. Pinckney v. Keyler, 4 E. D. Smith, 469. The act of Clary, the cashier, could not have been ratified by Fox so as to bind the

other partners, because Fox, as partner, could do only such things in the name of the firm as were necessary to carry on the banking business, for which the firm was organized, in the ordinary manner. The testimony fails to show any knowledge or notice on the part of the defendants that their cashier was seeking to bind them by a purchase of boots and shoes, and fails to show that the defendants kept, used, or received any benefit from the goods. The action is based upon the · theory that the firm purchased these goods. This theory has not in any respect been sustained, nor has there been any testimony tending to show it.

As to the second question, of entering judgment on the form of the verdict rendered, the objection, if any, to the verdict, was because the jury did not find the issues raised by the counter-claim in defendant's answer. . If this . is error, it is an error which is not prejudicial to the plaintiff, and of which he cannot complain. No substantial error appearing, judgment is affirmed. All the judges concurring.

Reporter: A rehearing was granted in the above case on Sept. 15, 1891. Upon the rehearing the court reversed the order affirming the judgment of the lower court and remanded the case for a new trial. (54 N. W. 593.)