THE FAMOUS SHOE & CLOTHING COMPANY, Appellant,
v. THE EAGLE IRON WORKS,
Respondent.

St. Louis Court of Appeals, November 9, 1892.

Manufacturing Corporations: IMPLIED AUTHORITY OF SECRETARY. The secretary of an incorporation, organized under the statutes of this state for the manufacture of machinery, has no implied power to bind it by orders on a merchant for the delivery of clothing at its cost to men employed by it; and the fact that the clothing was delivered on and pursuant to such orders to the persons named therein is no ground for holding the corporation liable.

*Appeal from the St. Louis City Circuit Court.*—HON. DANIEL DILLON, Judge.

AFFIRMED.

*Wm. C. & James C. Jones,* for appellant.

*Frank E. Richey* and *Wm. M. Kinsey,* for respondent.

The agreed statement of facts and the orders in question show that Beyer, the defendant's secretary,

had no authority from his company, either express or implied, to sign the said orders. That Beyer had such authority must be established by proof, as a condition precedent to recovery by the plaintiff. *Bank v. Hogan*, 47 Mo. 472; *Fayles v. Ins. Co.*, 49 Mo. 380. Since the defendant corporation was not expressly authorized by its charter to buy the articles named in the orders in question, "sundries," "one pair lady's low-cut French kid slippers" and such articles were not in any way necessary to the operation of its authorized business, a contract with reference to such articles was *ultra vires* of the corporation. As the defendant's charter specifies and, therefore, limits it to the business in which it may engage, and by express terms, or a fair implication therefrom, invalidates transactions outside of its legitimate corporate business, the question of *ultra vires* was properly raised by the defendant. *Dairy Co. v. Mooney*, 41 Mo. App. 665; *Dairy Co. v. Robinson*, 81 Mo. 19, and many cases cited.

THOMPSON, J.—This was an action commenced before a justice of the peace on the following merchant's account:

ST. LOUIS, Mo., September 1, 1891.

*Eagle Iron Works, 607 N. Levee.* Bought of Famous Shoe & Clothing Company.

| 1891. | | | | |
|---|---|---|---|---|
| Aug. 1 | 1 brace | Weber | $ | 50 |
| | 1 umbrella | Weber | 2 | 00 |
| | 1 hat | Weber | | 48 |
| | 1 suit | P. J. Huber | 15 | 00 |
| | 1 coat | Weber | 4 | 50 |
| | 1 pair pants | Weber | 2 | 95 |
| Aug. 8 | Bal. on suit | H. Ridgway | 15 | 00 |
| 14 | 1 pr. shoes, | Raaf | 1 | 50 |
| 18 | 1 pr. slippers | Raaf | 1 | 50 |
| | | | $ 43 | 43 |
| Sept. 23 | By cash of Mr. Weber | | 10 | 43 |
| | | | $ 33 | 00 |

On trial anew in the circuit court the case was submitted on the following agreed statement of facts:

"*First.* The plaintiff is a corporation of Missouri, authorized to and engaged in the sale of clothing, shoes, hats, caps and furnishing and household goods, and authorized by its charter to sell the character of goods which it claims to have sold defendant.

"*Second.* The defendant is a corporation of Missouri, authorized and engaged in the sale, manufacture and repairing of machinery and in carrying on a machine shop.

"*Third.* The goods claimed to have been sold by plaintiff to defendant were delivered by plaintiff to the parties named in the orders therefor filed with the papers in this case, which orders are made part of this agreement, and are marked exhibits A, B, C, D, E, F.

"*Fourth.* The prices charged in the account sued on are the reasonable value of such goods; said account is also made a part of this agreement, and marked exhibit G.

"*Fifth.* The signature of C. F. Beyer attached to the orders is genuine, and said Beyer, at the time of signing said orders, was the secretary of the defendant company.

"*Sixth.* The plaintiff had no notice of the extent or limitation of the defendant's charter powers, except such as might be implied or inferred from its name, from the location of its business at 610, 611, 612 North Levee, and from what its agent saw when the book of order blanks, from which exhibits A, B, C, D, E and F were taken, were handed to the said Beyer in the machine shops of the defendant, but that the plaintiff had such notice of the charter powers as was imparted by the record of the defendant's articles of association, duly recorded in the office of the recorder of deeds in the city of St. Louis, as required by law.

"*Seventh.* The defendant, as a corporation, did not use the goods sued for, and had no use for the same in their business, and no officer, director or stockholder outside of said Beyer, knew of the giving of the orders aforesaid, and defendant promptly disclaimed the authority of the said Beyer to issue said orders, when the knowledge that said orders had been given came to its knowledge, and at the same time refused to ratify said Beyer's acts aforesaid, but such disclaimer and refusal to ratify was not made until after the goods were delivered as aforesaid.

"*Eighth.* If entitled to recover at all the plaintiff should have judgment for $33."

All the orders were upon the same form, and the following copy of one of them may be given as an example of all:

"*To Famous Shoe & Clothing Co., N. W. cor. Broadway & Morgan Streets:*—

"Please deliver to bearer, Mr. Ridgway, one suit not to exceed $15, and charge to Eagle Iron Works.

"E. F. Beyer,

"Secretary and Treasurer.

"Mail bill."

Upon this agreed statement of the facts, the circuit court gave judgment for the defendant, to reverse which the plaintiff prosecutes this appeal. The judgment of the circuit court was clearly right. In order to reach this conclusion, it is not necessary to consider whether a manufacturing corporation, organized under the laws of this state, has power to become the purchaser of the species of goods described in the foregoing account. It can be imagined that circumstances might exist under which such transactions would be upheld, although not executed, as, for instance, where such purchases are adopted by the manufacturing corporation as a convenient mode of paying its employes

in commodities which they may wish to purchase. But we need not speculate upon this, as the agreed statement of facts affords no basis for such a speculation. Nor will it be accurate to rest our decision upon the want of power in the corporation itself, if the directors had passed a resolution to that effect, to become the purchaser of this species of goods; because the articles of association have not been put in evidence, nor does the agreed statement of facts undertake to disclose what powers the defendant corporation has undertaken to assume under them; nor does the governing statute (Revised Statutes, sec. 2771) undertake to do more than express, in a general way, the purpose for which the corporations may be organized under the article relating to "manufacturing and business companies." We, therefore, have to rest our conclusion upon a consideration of the powers of the secretary of such a company, judged with reference to the rules relating to the *powers of agents;* in other words, to treat the question merely as a branch of the law of agency. Treated in this way it appears that the source of the power of an agent is threefold: *First.* Powers expressly granted by his principal. *Second.* Powers which are implied from the known usages of trade and business, of which the courts take judicial notice, in respect of the particular species of agency, as that a bank cashier has power to transfer the negotiable power of the bank by his indorsement in his own name, with the addition of the word designating his office. *Third.* Powers which arise, upon a principle of estoppel, by the act or neglect of the principal in suffering its agent to hold himself out as possessing certain powers which have not in fact expressly been conferred upon them. To these may be added a fourth consideration—that the acts of an unauthorized agent may be adopted by a subsequent *ratification* by his principal after coming to a knowledge

of the doing of the unauthorized act. It will appear that the foregoing statement of facts does not indicate that the secretary of the defendant, in making the purchases in question, was acting under any of these sources of power. It shows that he was not expressly authorized, and that what he did was unknown to the other officers, directors and stockholders. It negatives the conclusion of a ratification by stating that the corporation disclaimed his acts as soon as it came to the knowledge of them. It does not exhibit a state of facts from which the circuit court was obliged to infer, as a conclusion of law, and consequently from which we are obliged to infer, that there had been, by the neglect of the directors and other officers of the corporation, any holding out of the secretary to this plaintiff or to the public generally as being possessed of these powers. On the other hand, it exhibits certain items of purchases made on four different dates, beginning on the first and ending on the eighteenth of August, with a credit following on the twenty-third of September. This is clearly not such an habitual acting in the face of the public as required the circuit judge, sitting as a jury, to find as a conclusion of law that the secretary had been held out, by the negligence and want of supervision of his superior officers, as possessing the power to bind the corporation by the transaction in question.

This brings us then to the only other source of power above indicated, and it is upon this that the argument of the plaintiff has been chiefly made. This rests upon that clause of the statute which may, perhaps, be regarded as merely declaratory of the common law, that "contracts may be implied on the part of corporations from their corporate acts, or those of an agent whose powers are of a general character." Revised Statutes, sec. 2508. This argument assumes

that the powers ascribed by the law to the secretary of a corporation are of a general character; that is to say that they are the powers of a general agent, or of a managing agent. Although the law ascribes very extensive powers in certain particulars to the cashiers of incorporated banks, founded upon the customs of business, of which the courts take judicial notice, it ascribes to the secretaries of other corporations no such powers as those which are here claimed for him. He is indeed an *officer* of the company (*Ehrenzeller v. Canal Co.*, 1 Rawle (Pa.) 181, 183), and is not merely its "servant" or "employe," within the meaning of a statute creating a preference in favor of the wages of servants and employes (*Wells v. Railroad*, 1 [McCrary, (U. S.) 18); nor is he a "servant, laborer or apprentice," within the protection of such a statute. *Coffin v. Reynolds*, 37 N. Y. 640. He is the proper custodian of the corporate seal (*Evans v. Lee*, 11 Nev. 194), the keeper of its records (*Smith v. Steamboat Co.*, 1 How. (Miss.) 479), and in general its organ for communication with the public. *Columbia Ins. Co. v. Masonheimer*, 76 Pa. St. 138. But the law does not ordinarily imply in the secretary of a corporation the power *ex officio* to bind the company by means of letters or documents signed officially (*Williams v. Railroad*, 5 Eng. L. & Eq. 497); nor can he, in the absence of a special authorization, give to a third person an acknowledgment that there is due to him from the corporation a certain sum of money, such as will bind the corporation (*Sears v. Wesleyan University*, 28 Ill. 183); nor bind it by a due bill given to a stockholder in consideration of his surrendering his shares (*Gregory v. Lamb*, 16 Neb. 205); nor make an assignment of an account of the corporation against a customer for goods manufactured and sold by it (*Read v. Buffum*, 79 Cal. 77); nor release the makers of notes held by the corporation from their

liability thereon, although he may have received express authority to renew such notes. *Moshannon, etc., Co. v. Sloan*, 109 Pa. St. 532. These and other authorities which might be cited show that the law does not ascribe to the secretary of a private corporation any of the powers of a general or managing agent; though he may, of course, possess those powers where they have been conferred upon him by the corporation through its governing body *in addition* to the ordinary powers and duties of his office. If anything more were needed to be said upon this question, we might refer to an analogous decision of the supreme court of South Dakota touching the powers of the cashier of a bank, while at the same time renewing attention to the fact that the implied or *ex officio* powers of the cashiers of banks are much larger than those of the secretaries of other corporations. That holding was that a bank is not liable for a purchase of boots and shoes, made in its name by its cashier for the benefit of a third person, in the absence of knowledge on its part of the purchase when made, or of a ratification since the purchase. *North Star Boot & Shoe Co. v. Stebbins*, 48 N. W. Rep. 833.

But it is argued that this plaintiff ought to recover in the present instance, because the contract has been completely *executed* on its part, so that there is nothing for the defendant corporation to do except to execute it on its part, that is, to pay the money; and an attempt is made to appeal to the principle that, where a contract is made with a corporation which is in excess of the powers of the corporation, and is fully executed by the other contracting party, the corporation thereby becomes estopped from repudiating it under the plea of *ultra vires*. An examination of the decisions which so hold will show that most of these are cases in which the corporation has in some way received the benefit of the

contract, and they rest upon the obvious principle that a party, seeking to disaffirm, cannot disaffirm without restoring what he has received. Indeed, the reasoning of some of the courts goes further than this; but we know of no decision which goes so far as to validate such a contract as the one under consideration. Here, the agreed statement of facts show that the corporation has not received the benefit. It shows that the goods claimed to have been sold by the plaintiff to the defendant were delivered by the plaintiff, not to the corporation but to the parties named in the orders which were filled by the delivery of the goods—that is, that they were delivered to *third parties*; and it does not show in what relations, if any, these third parties stood toward the corporation. The contract has, therefore, never been executed on the part of the plaintiff, *as against the corporation*, though it has been executed as against the third parties who received the goods. The case is, therefore, barren of the elements on which decisions in this state and elsewhere have held the corporation estopped from setting up the defense of *ultra vires*.

It ought to be added that no hardship or danger to the mercantile community can result from the holding which we feel constrained to make in this case, because no prudent merchant would sell goods to be delivered to different third persons, on the mere order of the secretary of a manufacturing corporation without inquiring into the fact and sources of his authority.

The very fact, that he undertakes to charge a manufacturing corporation with liability for such an unusual transaction, ought to put any ordinarily prudent merchant upon inquiry.

The judgment is affirmed. All the judges concur.